**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0180-WJM

MICHAEL J. BADAR,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE AND
REMANDING TO COMMISSIONER**

---

This Social Security benefits appeal is brought under 42 U.S.C. § 405(g). Plaintiff Michael J. Badar ("Plaintiff") challenges the final decision of Defendant, the Acting Commissioner of Social Security ("Defendant"), denying his application for supplemental security income benefits and disability insurance benefits. After a hearing, the denial was affirmed by an administrative law judge ("ALJ"), who ruled that Plaintiff was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for supplemental security income benefits and disability benefits is vacated and this case is remanded for further proceedings consistent with this order.

**I. BACKGROUND**

Plaintiff was born on October 13, 1960, and was 49 years old on the alleged disability onset date of November 20, 2009. (Administrative Record ("R.") (ECF No. 12

at 26, 39.) Plaintiff has a four-year degree in natural resource management, and has past relevant work experience as a lubrication technician, vocational instructor, and computer programmer. (R. at 39, 73.)

Plaintiff applied for disability insurance benefits and supplemental security income on February 15, 2012, and February 16, 2012, respectively. (R. at 26.) Plaintiff alleged that he is disabled due to the following conditions: seizure disorder, major depressive disorder, mood disorder, personality disorder, and chronic pain of the thoracic spine. (R. at 28–29.) His application was initially denied on June 4, 2012. (R. at 26.) Plaintiff requested and received a hearing before ALJ Patricia E. Hartman. (R. at 41.) On June 18, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 20, 2009, the alleged disability onset date. (R. at 28.)

At step two, the ALJ found that Plaintiff suffered from "the following severe impairments: seizure disorder, major depressive disorder, mood disorder, personality disorder, and cannabis abuse." (*Id.*) The ALJ did not find that any other claimed condition was a severe impairment. (R. at 28–29.)

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations. (R. at 29.) In so finding, the ALJ considered the "paragraph B" criteria were met as to Plaintiff's mental impairments. (*Id.*) The ALJ found that Plaintiff had "mild restrictions in activities of daily living; moderate difficulties with social functioning; moderate difficulties with concentration, persistence, or pace; and one or two repeated episodes of decompensation, each of extended duration." (R. at 30.) However, because these impairments were not of sufficient severity to meet the "paragraph B" criteria, the ALJ proceeded to assess Plaintiff's residual functional capacity ("RFC"). (R. at 30–31.)

The ALJ concluded that Plaintiff has the RFC to

> perform medium work . . . except that he cannot climb ladders or scaffolds or work at unprotected heights or with moving mechanical parts or vibrating tools. [Plaintiff] is limited to simple, routine, and repetitive tasks in occupations with a maximum SVP of 2. He cannot perform at production rate pace (e.g., assembly line work), but can perform goal-oriented work (e.g., office cleaner). He can occasionally interact with supervisors and co-workers, but cannot interact with the public, although the public may be present in the work area.

(R. at 31.) Then, at step four, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work. (R. at 39.)

At step five, the ALJ found that other jobs exist in the national economy that Plaintiff can perform with the RFC assessed, including industrial cleaner or dining room attendant. (R. at 40.) The ALJ further held that, even if the RFC were further limited to light rather than medium exertional work, Plaintiff could still perform the jobs of office helper or housekeeping cleaner. (*Id.*) Accordingly, the ALJ found that Plaintiff was not

3

disabled under the Social Security Act and was therefore not entitled to benefits. (R. at 40–41.)

Plaintiff appealed to the Social Security Appeals Council, which denied review. (R. at 1.) Accordingly, the ALJ's June 18, 2013 decision is the final administrative action for purposes of review. Plaintiff then filed this action seeking review of the ALJ's decision. (ECF No. 1.)

## II.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Plaintiff's appeal raises numerous issues that he claims require reversal, including: (1) the ALJ erred in formulating the RFC with respect to Plaintiff's ability to

follow more than one- to two-step instructions and his limitations in concentration, persistence, and pace; (2) the ALJ's reliance on the vocational expert's testimony was flawed as a result of the ALJ's hypothetical questions based on the flawed RFC; and (3) the ALJ improperly relied on Plaintiff's alleged noncompliance with his medications for his seizure disorder to diminish Plaintiff's credibility without engaging in the requisite four-factor analysis. (ECF No. 15.) The Court will consider each of these arguments in turn.

## A. Non-Exertional Limitations

Plaintiff argues that the ALJ's RFC finding is flawed because, among other reasons, the ALJ failed to include limitations in concentration, persistence, and pace, and failed to limit Plaintiff to jobs requiring only one- to two-step instructions. (*Id.* at 15–18.)

As to one- to two-step instructions, the ALJ considered this issue in weighing the medical opinion of Dr. Thomas Tsai, a state psychological consultant. (R. at 38.) Dr. Tsai's opinion indicated, with respect to Plaintiff's concentration and persistence limitations, that he was "moderately limited" in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods, but not significantly limited in his ability to carry out very short and simple instructions. (R. at 99.) Dr. Tsai also assessed Plaintiff's RFC, opining that he

> is able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, *i.e.*, work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with most changes in a routine work setting. There are no problems with attention, and there is sufficient concentration to perform simple 1–2 step tasks, all on a routine and regular basis.

5

(*Id.*)  The ALJ gave Dr. Tsai's opinion "substantial weight," adopting his opinion with respect to unskilled work, but disagreeing with his opinion that Plaintiff is limited to one- to two-step tasks because of Plaintiff's prior work experience as a lubrication technician and other activities.  (R. at 38.)

The ALJ's reasons for discounting Dr. Tsai's opinion with respect to the one- to two-step tasks were based on contrary evidence in the record suggesting that Plaintiff had successfully completed tasks of greater complexity.  The consistency of a medical opinion with other evidence in the record is an appropriate factor for consideration in weighing a medical opinion, *see* 20 C.F.R. § 416.927(d), so long as the ALJ "give[s] good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted).  Therefore, the Court concludes that the ALJ permissibly discounted Dr. Tsai's opinion regarding Plaintiff's limitation to one- to two-step tasks.

Dr. Tsai's opinion was also the basis for the ALJ's finding as to Plaintiff's limitations in concentration, persistence, and pace, which Plaintiff also challenges here.  This part of Plaintiff's argument requires a different analysis, because the ALJ adopted Dr. Tsai's opinion as to those limitations, agreeing that Plaintiff has "moderate difficulties" in those areas.  (R. at 30.)  Plaintiff argues that the ALJ erred because, despite finding that Plaintiff was so limited, she did not include these limitations in the RFC or in her questions to the vocational expert.  (ECF No. 15 at 15–18.)

Defendant concedes that the ALJ adopted Dr. Tsai's opinion as to limitations in concentration, persistence, and pace, but argues that the ALJ's finding as to these

limitations was part of her "paragraph B" analysis at step three rather than the RFC, and "the ALJ was under no obligation to include them in her hypothetical questions or in the ultimate [RFC] assessment." (ECF No. 16 at 16.) In support, Defendant cites *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014), an unpublished case which concluded that "the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case." Defendant also argues that Dr. Tsai "translate[d]" Plaintiff's moderate limitations in concentration, persistence, and pace into functional limitations in his RFC assessment. (ECF No. 16 at 16–17.)

While *Bales* is certainly persuasive, it must be considered alongside the contrary unpublished Tenth Circuit opinion cited by Plaintiff. *See Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014). In *Jaramillo*, the ALJ found at step three that the plaintiff was moderately limited in his ability to carry out instructions, attend and concentrate, and work without supervision. *Id.* The Tenth Circuit rejected the Commissioner's argument that the ALJ's RFC limitation to simple, routine, and repetitive tasks sufficiently accounted for these impairments, consequently finding that the RFC was unsupported by substantial evidence. *Id.* "Moderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a [vocational expert]." *Id.* (citing *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); and *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)); *see also Haga*, 482 F.3d at 1208 ("[A] moderate impairment is not the same as no impairment at all."); *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (limitation to "simple,

unskilled job tasks" is insufficient to incorporate "moderate difficulties maintaining concentration, persistence, or pace"). Other circuits, including the Third, Fourth, Seventh, Eighth, and Eleventh, have explicitly held in published opinions that a limitation to unskilled or simple and routine work does not account for a claimant's limitations in concentration, persistence, and pace. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (in turn citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (per curiam); and *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996))). These cases align with the Tenth Circuit's decision in *Jaramillo*.

Taken together, these cases clarify that the question whether a limitation must be incorporated into an RFC—and into a hypothetical question posed to a vocational expert—is not resolved merely because the limitation was identified in step three of the analysis. *Bales* does not require the Court to find otherwise, as the Tenth Circuit limited its holding to that case's particular facts in which the record contained evidence that the plaintiff's limitations in concentration and attention did not cause her further functional limitations. *Bales*, 576 F. App'x at 797. Therefore, where the ALJ finds that Plaintiff suffers from a certain limitation, that limitation must be considered by the ALJ in formulating the RFC regardless of the fact that the limitation was identified at step three.

Here, as is typical, the ALJ's formulation of the RFC affected the hypotheticals she propounded to the vocational expert when determining whether jobs exist for an

individual such as Plaintiff. The ALJ did ask the vocational expert to assume "simple, routine, repetitive work with a maximum SVP of 2," but—even apart from the step three question addressed above—the Tenth Circuit has made clear that a reduced skill level does not automatically account for mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) ("While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions . . . ."); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1491–92 (10th Cir. 1991).

Defendant argues that Dr. Tsai's RFC assessment sufficiently accounted for Plaintiff's concentration, persistence, and pace limitations, but that does not support a finding that the ALJ's RFC necessarily accounted for those moderate limitations. Rather, the ALJ discounted Dr. Tsai's opinion that Plaintiff had "sufficient concentration to perform simple 1–2 step tasks . . . on a routine and regular basis," which—in Defendant's terminology—was clearly intended to "translate" Plaintiff's moderate concentration limitations into Dr. Tsai's RFC assessment. (R. at 99.) Because the ALJ did not adopt Dr. Tsai's "translated" functional limitations in their entirety, Dr. Tsai's RFC assessment does not establish that the ALJ's RFC accounted for Plaintiff's moderate limitations in concentration, persistence, and pace that the ALJ credited in step three. As discussed above, the ALJ's decision not to credit Dr. Tsai's opinion with respect to one- to two-step tasks was permissible. However, it had an effect on the ALJ's step five analysis, because the ALJ relied on the vocational expert's testimony, which was based on the ALJ's RFC. Indeed, the vocational expert confirmed that the jobs she identified that could be performed by an individual with the RFC proposed by the ALJ would be eliminated if the limitation to one- to two-step tasks were imposed. (R. at 79.) Thus,

the ALJ's adoption of most of Dr. Tsai's RFC opinion does not demonstrate that the ALJ's RFC assessment necessarily incorporated the moderate limitations in concentration, persistence, and pace.

The Court cannot determine, from the ALJ's decision, whether the ALJ's RFC accounted for Plaintiff's moderate limitations in concentration, persistence, and pace that the ALJ found in step three. "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Haga*, 482 F.3d at 1208. As such, in relying on the vocational expert's testimony at step five, the ALJ did not have substantial evidence from which to conclude that sufficient jobs exist for an individual with all of Plaintiff's limitations. The Court finds, therefore, that the ALJ's decision must be vacated for reconsideration.

## B.    Noncompliance

Plaintiff also challenges the ALJ's finding that Plaintiff's noncompliance with his medication for his seizure disorder detracts from his credibility. (ECF No. 15 at 13–15.) Among other things, Plaintiff argues that the ALJ's decision fails to comply with the requirement that, "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey v. Bowen*, 816 F.2d 508, 517 (10th

Cir. 1987)).

Defendant argues that the ALJ's decision does discuss all four of the *Frey* factors; it points out the ALJ's commentary that Plaintiff's symptoms from his seizure disorder were well-controlled when he was appropriately medicated as prescribed by his treating physicians, as well as evidence that Plaintiff admitted to noncompliance with his medications on several occasions, citing problems with the side effects of those medications. (*See* R. at 33.) As to the final factor—whether Plaintiff's noncompliance was "without justifiable excuse"—the ALJ's decision states:

> The claimant often complained of side effects from his anti-convulsive medication, including increased depression, irritability, "Keppra rage," and brain fogs. However, whatever adverse side effects the claimant may have had at various times could presumably be eliminated or at least greatly diminished by simple changes in either the type of medication or dosage. Dr. Miller did attempt to change his medication regime. Yet, the medical evidence shows that the claimant would stop or self-decrease[] his medications without allowing sufficient time to adjust to changes. Dr. Miller noted that the claimant had tried multiple medications over time, with the only side effect being coordination disturbances, but he had been non-compliant.

(*Id.*)

The Court agrees that the ALJ considered all four *Frey* factors, but is troubled by the ALJ's discussion of the fourth factor. While the ALJ apparently determined that Plaintiff's noncompliance was not justifiable because the side effects he cited were easily avoided, the ALJ's decision explicitly bases this determination on a presumption. (*Id.* ("side effects . . . could *presumably* be eliminated" (emphasis added)).) The ALJ's citation to Dr. Miller's treatment notes do not support this presumption; the cited notes support a finding that an attempt to change medications was made, but not that a

successful change would have eliminated the side effects that caused Plaintiff's noncompliance.

There may be an explanation for the ALJ's presumption, and evidence may exist to support it. However, no such explanation appears in the ALJ's opinion, and this Court may not infer one. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."). On rehearing, the ALJ should reevaluate this portion of her decision as well.

**C.      Additional Arguments**

Because the Court vacates and remands for the reasons stated above, the Court need not address the other arguments Plaintiff raises. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments. The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 6th day of November, 2015.

BY THE COURT:

*[signature]*

William J. Martinez
United States District Judge